# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. '20 MJ2790
LG cellular phone )
IMEI 359962109228575 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

LG cellular phone, IMEI 359962109228575

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

Electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 14, 2020, up to and including June 13, 2020. (see Attachment B)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 952, 960 and 963 | Importation of Methamphetamine |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Paul Benjamin*
*Applicant's signature*

Paul E. Benjamin, AUSA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/13/2020

*Judge's signature*

City and state: San Diego, Ca.    Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, SPECIAL AGENT Adam C. Corey, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

>LG cellular phone
>
>IMEI 359962109228575
>
>("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Annabel Luna for importing approximately 2.4 kilograms of methamphetamine and approximately .42 kilograms of heroin from Mexico into the United States. The Target Device is currently in the custody of U.S. Drug Enforcement Administration and located at 4560 Viewridge Avenue, San Diego, CA 92123.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am assigned to the DEA San Diego Field Division Office in San Diego, California as a member of Narcotics Task Force (NTF) Team 3. NTF Team 3's mission is to conduct counter-drug investigations and operations throughout the San Diego area. I have been employed with the DEA since March of 2005. My duties include the investigation and apprehension of individuals involved in narcotic related activities. I have received formal training at the DEA Training Academy located in Quantico,

1

Virginia. My training included the identification of many types of controlled substances by sight and odor, including methamphetamine.

4.  During the course of my duties as a DEA Special Agent, I have participated in undercover investigations involving the purchase of controlled substances, executed search warrants for controlled substances, and have conducted numerous surveillances in connection with these investigations. I have spoken with drug dealers, drug users, and confidential sources about current drug trends, methods of drug sales and use of drugs. I am familiar with the operation of illegal drug trafficking organizations in the United States, including those organizations whose operations involve the distribution of wholesale quantities of cocaine, methamphetamine, heroin and money laundering. I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.  I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is

underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On June 12, 2020, at approximately 9:30 p.m., defendant Annabel LUNA ("LUNA"), a United States citizen, attempted to enter the United States through the pedestrian lane at the Otay Mesa Port of Entry. Based on a computer alert, LUNA was referred to a secondary inspection where a trained narcotic detention dog alerted to her rear waistband/back area. Customs and Border Protection (CBP) Officers located two packages from LUNA's torso area and two packages from LUNA's shoes. The two packages from LUNA's torso area yielded approximately 2.46 kilograms which field tested positive for methamphetamine. The two packages from LUNA's shoes yielded approximately .42 kilograms which field tested positive for heroin.

8. At approximately 11:58 p.m., DEA Special Agent Adam Corey interviewed LUNA. LUNA agreed to waive her Miranda rights and speak with agents. During the interview, LUNA stated to SA Corey that she was going to be paid $2,000 for the packages found on her waist and $800 for the packages in her shoes in exchange for crossing the packages into the United States. LUNA stated she knew packages contained methamphetamine, but she didn't ask about the quantity.

10. LUNA was arrested and charged with violation of Title 21, United States Code, 952 and 960, importation of a controlled substance, and was provided a Notice to Appear.

11. The Target Device was found in possession of LUNA and was seized at the time of arrest.

12. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and

4

my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on May 14, 2020, up to and including June 13, 2020.

## METHODOLOGY

13.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic

data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

16. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

17. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

1 | I swear the foregoing is true and correct to the best of my knowledge and belief.

*Adam Corey*
_____
SPECIAL AGENT Adam C. Corey
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __13th__ day of June, 2020.

_____
HONORABLE __Karen S. Crawford__
United States Magistrate Judge

7